DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@holdenlegal.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@holdenlegal.com
HOLDEN KIDWELL HAHN & CRAPO, P.L.L.C.
P.O. Box 50130
1000 Riverwalk Drive, Suite 200
Idaho Falls, ID 83405
Telephone: (208) 523-0620
Facsimile: (208) 523-9518

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT LAWHON,<br><br>                    Plaintiff,<br><br>v.<br><br>BLACKFOOT SCHOOL DISTRICT NO. 55, a body corporate and politic of the State of Idaho,<br><br>                    Defendant. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Scott Lawhon, by and through his counsel of record, Holden, Kidwell, Hahn & Crapo, P.L.L.C., and as a cause of action against Defendant Blackfoot School District No. 55, a body corporate and politic of the State of Idaho, complains and alleges as follows:

### JURISDICTION AND VENUE

1.     This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*; the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

2.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1343, and 1367.

3.  Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 12117 and 29 U.S.C. § 2617 because the unlawful employment practices were committed in this judicial district.

## PARTIES

4.  Plaintiff Scott Lawhon ("Plaintiff") is a male citizen and resident of the United States of America, who resides in Bingham County, Idaho.

5.  Defendant Blackfoot School District No. 55 (the "District"), a body corporate and politic of the State of Idaho, is located in Bingham County, Idaho.

6.  At all times relevant to this Complaint, the District regularly employed fifteen or more persons whose services were performed in the State of Idaho and was engaged in an industry affecting commerce. Consequently, the District's conduct is properly regulated by Idaho Code §§ 18-7301 and 67-5901, *et seq.*; 42 U.S.C. § 12101, *et seq.*; and 29 U.S.C. § 2601, *et seq*.

## FACTS COMMON TO ALL COUNTS

7.  Plaintiff realleges and incorporates by reference paragraphs 1 through 6 as though fully set forth herein.

8.  On or about December 21, 2005, the District hired Plaintiff as a skilled maintenance man.

9.  Plaintiff's duties as a maintenance man generally included maintaining, repairing, and remodeling the District's various facilities. These duties usually involved manual labor of varying intensity.

10.     For nearly 10 years, Plaintiff worked for the District without issue.  Plaintiff received very favorable performance evaluations and satisfactorily performed his duties at all times.

11.     In the fall of 2014, Plaintiff began to experience increased pain and weakness in his left shoulder.  Plaintiff had previously had problems with his right shoulder also. Upon visiting his doctor, Plaintiff learned that his left shoulder required immediate surgical attention because he had a major tear in his rotator cuff.

12.     In or about November 2014, Plaintiff informed his supervisor and Principal Hal Silzly ("Silzly") of his need for immediate shoulder surgery and requested time off to have the surgery as soon as possible.  At that time, Plaintiff was working on a remodel project for the District.

13.     Silzly denied Plaintiff's request for immediate time off, and instead required Plaintiff to finish the remodel project before he left to have surgery.  Not wanting to jeopardize his employment, Plaintiff complied with Silzly's orders and finished the remodel project, despite the mounting pain and injury to his shoulder.

14.     As a result of the continued physical activity required to complete the remodel project, Plaintiff's rotator cuff was 100% torn by the time he was able to have his surgery performed.

15.     On or about December 1, 2014, Plaintiff also had his right shoulder evaluated by his doctor due to increasing pain he was experiencing.  Following an MRI of his right shoulder, Plaintiff was informed that he had torn his right rotator cuff as well, which also required reconstructive surgery.

16.     Plaintiff had surgery on his left shoulder in November 2014, and his right shoulder was operated on in January 2015.

17.   Following his diagnoses, Plaintiff coordinated with his supervisors, scheduling time off to complete both of his shoulder surgeries so he could minimize the total time off work.

18.   In order to have his shoulder surgeries and to recover from those surgeries, Plaintiff used all of his accumulated sick leave, paid time off, and all of the sick bank hours the District would allow him.  Additionally, Plaintiff used disability insurance coverage to manage his time for recovery.

19.   Plaintiff requested additional sick leave bank hours, but the District denied his request asserting Plaintiff had "excessive use of his sick days."

20.   At no time did the District ever assert that Plaintiff's request for leave could not be accommodated, or that he could not perform his duties after his shoulders healed.

21.   Following his surgeries, Plaintiff pursued all the physical therapy available to him in efforts to restore the strength in his arms and his range of motion which would allow him to return to work as soon as possible.

22.   At no time during his post-operation recovery did the District offer Plaintiff light duty or other non-labor intensive work.  Although Plaintiff recently discovered that on or about March 18, 2015, Silzly allegedly asked the District to have Plaintiff return to work to perform light duty, this information was never conveyed to Plaintiff.  Accordingly, the District would not allow Plaintiff to return to work until he was fully released to perform his position.

23.   Plaintiff also has learned that one of the reasons the District did not offer him light duty was due to fear of liability.  Specifically, the District worried that if Plaintiff returned to work, he would injure himself again resulting in further liability to the District.

24.    Between December 2014 and June 2015, Plaintiff provided the District with updates from his doctor concerning his recovery and possible release.  In or about May 2015, Plaintiff's doctor informed him that he would likely be fully released to go back to work beginning July 1, 2015.

25.    Plaintiff provided his Activity Status Report from his doctor to the District that identified July 1, 2015, as his likely return to work day.

26.    In mid-June 2015, the District requested to meet with Plaintiff.  At this meeting, the District informed Plaintiff that it was terminating his employment as of July 1, 2015, because he was allegedly "unable to perform the essential functions of the job."

27.    At this meeting, Plaintiff informed the District that his doctor had tentatively approved his return to work for July 1, 2015.  Furthermore, Plaintiff twice requested the District give him two more weeks so he could see his doctor again to obtain a full release.  The District simply responded "no," but told Plaintiff he could apply for his position.

28.    Ultimately, the District terminated Plaintiff's employment without any discussion or attempt to engage in an interactive process. Furthermore, the District failed to provide an assessment or evaluation of Plaintiff to determine whether or not he could perform the essential functions of his position.

29.    Shortly after Plaintiff's meeting with the District, his position was posted as accepting applications.  Plaintiff applied and was interviewed for his old position, but was turned down despite his years of experience and certifications.  Plaintiff, who was 51 at the time he applied, was instead replaced by a 21 year-old with little experience who did not have the required certifications requested.

30.     When Plaintiff applied for unemployment compensation, the District falsely asserted that he was terminated for poor performance.

31.     On or about April 5, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Idaho Human Rights Commission ("IHRC"), asserting age and disability discrimination against the District.

32.     On or about April 18, 2016, Plaintiff received his Notice of Right to Sue.

33.     Plaintiff has exhausted his administrative remedies.

<u>COUNT ONE</u>
<u>VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT</u>
**(Failure to Accommodate)**

34.     Plaintiff realleges and incorporates by reference their respective paragraphs 1 through 33 as though fully set forth herein.

35.     Plaintiff was disabled within the meaning of the ADAAA as a result of his shoulder impairments and his need for surgery to repair his shoulders all of which impacted his musculoskelatal system.

36.     Plaintiff's disabilities substantially limited his major life activities and/or major bodily functions, including the ability to lift, care for himself, perform manual tasks, concentrating and working. In addition, the shoulder impairments and surgeries substantially limited Plaintiff's musculoskeletal system.

37.     Plaintiff's disabilities required that Plaintiff take time off for surgery to repair Plaintiff's shoulder injuries.

38.     Plaintiff's disabilities also required that Plaintiff perform no and/or light duty work prior to being fully released.

39.     Plaintiff was a qualified individual able to perform  the essential functions of his job with or without reasonable accommodations.

40.     The District failed to accommodate Plaintiff by refusing to allow Plaintiff to return to work on light duty or engage in any interactive process related to Plaintiff's restrictions and return to work.

41.     The District failed to accommodate Plaintiff by terminating his employment only two weeks prior to his scheduled full release to return to work, despite accommodating his need for time off during the approximately six months prior.

42.     The District failed to offer any explanation as to why the District could not accommodate Plaintiff for an two additional weeks, particularly when he would have returned to work with a full release.

43.     The District took adverse action against Plaintiff by refusing to allow Plaintiff to return to work on light duty or denying him an additional leave of absence, terminating Plaintiff's employment, and failing to engage in the interactive process with Plaintiff.

44.     The District refused to allow Plaintiff to return to work and terminated Plaintiff's employment based upon his disabilities.

45.     As a direct and proximate result of the District's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer,  a loss of earnings, employment benefits, and job-related opportunities.  Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him, including reinstatement.

## COUNT TWO
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
### (Failure to Accommodate)

46.     Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as though fully set

forth herein.

47.     The District violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by failing

to accommodate Plaintiff's disabilities.

48.     As a direct and proximate result of the District's actions and/or failures to act, Plaintiff has

suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related

opportunities.  Plaintiff is therefore entitled to general and compensatory damages, such

amount to be proven at trial, as well as any other equitable remedies available to him,

including reinstatement.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
### (Disability Discrimination)

49.     Plaintiff realleges and incorporates by reference paragraphs 1 through 48 as though fully set

forth herein.

50.     At all time relevant hereto, Plaintiff had disabilities as defined by the ADAAA.

51.     Plaintiff was a qualified individual under the ADAAA, i.e., an individual who, with or

without reasonable accommodation could perform the essential functions of his job.

52.     The District took adverse action against Plaintiff based upon his disabilities including

refusing to allow Plaintiff to work light duty and/or have an extended leave of absence,

terminating Plaintiff's employment, and failing to rehire Plaintiff.

53.     As a direct and proximate result of the District's actions and/or failures to act, Plaintiff has

suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related

opportunities.  Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him, including reinstatement.

**COUNT FOUR**
**VIOLATION OF THE IDAHO HUMAN RIGHTS ACT**
**(Disability Discrimination)**

54.     Plaintiff realleges and incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55.     The District violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by discriminating against Plaintiff by discriminating against Plaintiff based upon his disabilities.

56.     As a direct and proximate result of the District's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities.  Plaintiff is therefore entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to him, including reinstatement.

**COUNT FIVE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT**
**(Perceived Disability)**

57.     Plaintiff realleges and incorporates by reference paragraphs 1 through 56 as though fully set forth herein.

58.     The District perceived and regarded Plaintiff as being disabled, treating Plaintiff as if he had additional shoulder-related disabilities that made him a risk for injury to himself if he returned to with under light duty or if he returned to work after being fully released.

59.     The perceived disabilities are not transitory or minor.  The perceived disabilities exceed six months in duration.

60.    Plaintiff was subjected to adverse employment actions by the District when he was denied the opportunity to perform light duty work, and when his employment was terminated by the District, and when the District refused to rehire Plaintiff.

61.    Plaintiff was qualified for his job with the District and able to perform the essential functions of his job with or without reasonable accommodations.

62.    The District took adverse employment action against Plaintiff as a result of the District regarding him as disabled.

63.    As a direct and proximate result of the District's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job opportunities.  Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proved at trial, as well as any other equitable remedies available to him, including reinstatement.

**COUNT SIX**
**VIOLATION OF THE IDAHO HUMAN RIGHTS ACT**
**(Perceived disability)**

64.    Plaintiff realleges and incorporates by reference paragraphs 1 through 63 as though fully set forth herein.

65.    The District violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by discriminating against Plaintiff due to the District regarding Plaintiff as disabled.

66.    As a direct and proximate result of the District's actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earning, employment benefits and job opportunities.  Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him, including reinstatement.

## COUNT SEVEN
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### (Interference and/or Retaliation)

67.     Plaintiff realleges and incorporates by reference paragraphs 1 through 66 as though fully set

forth herein.

68.     Plaintiff availed himself of a protected right under the FMLA by qualifying for and taking

FMLA leave.

69.     The District terminated Plaintiff's employment as a result of Plaintiff taking FMLA leave.

70.     The District interfered with Plaintiff's FMLA rights and/or retaliated against Plaintiff for

exercising his FMLA rights by: (1) failing to allow Plaintiff to exercise his FMLA rights; (2)

failing to return Plaintiff to work when he was able to perform light duty work; (3) failing

to provide Plaintiff with the same or equivalent job when he attempted to return from FLMA

leave; (4) terminating Plaintiff's employment; (5) posting Plaintiff's position; and (6) failing

to hire Plaintiff when he reapplied for his position as a result of exercising his FMLA rights.

71.     The District's termination of Plaintiff and failure to hire Plaintiff occurred under

circumstances raising a reasonable inference, or showing direct evidence, that the District

terminated Plaintiff's employment due to his exercise of FLMA rights or to interfere with

his FMLA rights.

72.     As a direct and proximate result of the District's actions and/or failure to act, Plaintiff has

suffered, and will continue to suffer, a loss of earnings, employment benefits, and job

opportunities,   Plaintiff is thereby entitled to general damages, such amount to be proven at

trial, plus interest, as well as any other equitable remedies available to him, including

reinstatement.

73. The District's actions and/or failures to act were committed in bad faith, for which Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. § 2617(a)(1).

## COUNT EIGHT
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### (Age Discrimination)

74. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as though fully set forth herein.

75. At the time the District terminated Plaintiff's employment, Plaintiff was 51 years old.

76. Plaintiff had performed his job satisfactorily.

77. Following Plaintiff's termination, the District refused to rehire Plaintiff and replaced Plaintiff with someone who was substantially younger with little to no experience.

78. The District terminated Plaintiff's employment and refused to rehire Plaintiff because of his age or would not have terminated Plaintiff but for his age.

79. As a direct and proximate result of the District's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job opportunities. Plaintiff is therefore entitled to damages in an amount to be proven at trial, as wells as any equitable remedies available to him, including reinstatement.

80. The District's conduct was willful and done with a reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. § 626(b).

## COUNT NINE
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
### (Age Discrimination)

81.     Plaintiff realleges and incorporates by reference paragraphs 1 though 80 as though fully set

forth herein.

82.     The District violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq*., by

subjecting Plaintiff to discrimination on the basis of age.

83.     The District terminated Plaintiff's employment and refused to rehire Plaintiff because of his

age or used his age as a motivating factor in its decision.

84.     As a direct and proximate result of the District's actions and/or failures to act, Plaintiff has

suffered and will continue to suffered a loss of earnings and other employment benefits and

job opportunities.  Plaintiff is thereby entitled to damages, in an amount to be proven at trial,

as wells as any equitable remedies available to him, including reinstatement.

## ATTORNEY'S FEES

85.     As a further direct and proximate result of the District's actions and/or failure to act, Plaintiff

has been compelled to retain the services of counsel, and have incurred and will continue to

incur costs and attorney's fees. Plaintiff is therefore entitled to attorney's fees and costs

incurred in pursuing this action pursuant to 29 U.S.C. § 216(b), 29 U.S.C. § 2617(a)(3), 42

U.S.C. § 1981(b), 42 U.S.C. § 2000e-5(k) and Idaho Code §§ 12-120 and 12-121.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Plaintiff seeks the judgment of the Court against the District as follows:

1.      For general and compensatory damages, and all other statutorily available

        damages, in an amount to be proven at trial;

2.      For any equitable remedies available to him, including reinstatement;

3.      For statutorily available costs and attorney's fees;

4.      For prejudgment interest on all amounts claimed; and

6.      For such other and further relief as the Court deems just and proper.

DATED this 13th day July, 2016.

                                        _/s/_____
                                        DeAnne Casperson, Esq.
                                        Holden, Kidwell, Hahn & Crapo, P.L.L.C.

G:\WPDATA\DC\18671 Lawhon\Pleadings\Complaint V.1.wpd:dg

14   –   COMPLAINT AND DEMAND FOR JURY TRIAL